528 So.2d 796 (1988)
James HALL
v.
MISSISSIPPI CHEMICAL EXPRESS, INC., and Mack Trucks, Inc.
No. 57648.
Supreme Court of Mississippi.
May 18, 1988.
Rehearing Denied August 10, 1988.
*797 Richard B. Graves, II, Graves & Riley, Gulfport, for appellant.
Thomas W. Tyner, James L. Quinn, Aultman, Tyner, McNeese & Ruffin, R.A. Gray, III, Weathers, Gray & Leggett, Hattiesburg, for appellees.
Before DAN M. LEE, P.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
This appeal is brought by an oil refinery worker seriously injured on the job. Having secured his less than generous but legally adequate remedy under our workers' compensation laws, the worker sued in tort naming every defendant he could find, hoping to find a deep pocket somewhere.
The case is now down to two possible defendants  the manufacturer and owner/operator of the diesel truck whose "idling" is said to have ignited the conflagration and caused plaintiff's concededly serious injuries. The facts make clear that factually and legally these defendants' connection with the case is just too tenuous. The Circuit Court directed a verdict at the end of plaintiff worker's case. We affirm.

II.

A.
James Hall is a 48-year-old resident of Gulfport, Mississippi. On December 26, 1983, Hall was an employee of Amerada Hess Corporation at the Black Creek Petroleum Refinery near Purvis, Mississippi. On that date Hall was injured in a fire on the refinery premises while in the course and scope of his employment.
The facts regarding the fire were before the Court recently in Smith v. Fluor Corporation, 514 So.2d 1227 (Miss. 1987)  Hall was a plaintiff there, too  and those need not be repeated here in detail.
Amerada Hess bought the refinery in 1971. We are concerned with the pre-heater/heat exchanger unit 6E-10 and associated valves and piping. Hess had not been using the heat exchanger for several years prior to the December 1983 explosion. The inlet valve to the heat exchanger was closed but both the bypass valve and the outlet valve were open allowing hydrocarbons to pass into the preheater. This permitted water vapor in the gas stream to condense and collect on the lowest part of the preheater  the inlet header. During an abnormally cold December in 1983, this water froze, bursting the pipe. When it thawed on December 26, a cloud of hydrocarbons escaped or ignited, allegedly by the exhaust pipe of a Mack diesel truck stopped and idling nearby. The flames severely injured Plaintiff, Hall, a Hess employee.
*798 The record reflects the following scenario immediately prior to the fire. At around 4:00 p.m. on December 26, James Strebeck, a driver for Mississippi Chemical Express (MCX), pulled into the Hess Refinery after a five minute run from the MCX Terminal in Purvis, Mississippi. There was another truck in front of him waiting to unload but unloading was postponed due to a frozen pipe. The driver of the first truck decided to leave and traded trucks with Strebeck, taking Strebeck's truck to MCX. Several Hess employees, including James Hall, worked to thaw the pipeline with steam.
Around 6:00 p.m., Strebeck was able to begin unloading and another MCX truck  the culprit Mack diesel truck  drove up to the acid rack; this truck was driven by Graham Davis. Davis stopped and let the engine idle. Strebeck went to talk to Davis and as he started to get up on the truck, Strebeck saw a blue flame around the smoke stack of Davis' truck. Just before this, Hall and several other Hess employees, someone named Cook, Terry Smith and James Morrow, were alerted by a hissing noise. Hall smelled hydrocarbons and noticed that it was foggy. As Cook reached up to cut off a valve leading to the leaking pipe, the workers were engulfed in flames.

B.
On April 8, 1985, Hall commenced this civil action by filing his complaint in the Circuit Court of Lamar County. Hall named as defendants Amerada Hess; Marsh and McClennan, primary inspection contractors, Mack Trucks, Inc.; Mississippi Chemical Express, Inc.; Fluor Corporation, the builder of the refinery; and UOP, a refinery inspection firm. Eventually a settlement was reached with Amerada Hess and Marsh and McClennan. Summary judgment for Fluor Corporation was affirmed by this Court in Smith v. Fluor Corporation, 514 So.2d 1227 (Miss. 1987). UOP received a favorable verdict from the jury and no appeal was taken.
All that remains is the present suit against Mack Trucks and MCX. Hall complained that MCX had failed to properly train its drivers as well as warn them of the possibility of the truck's engine igniting escaped hydrocarbons. He sued Mack Trucks for having manufactured the truck which ignited the explosion. Hall maintained the truck was deficient in design and manufacture, that Mack Trucks failed to warn of the danger of igniting hydrocarbons, and for failure to equip the trucks with an automatic shutdown device. At trial, the Circuit Court directed a verdict for both Defendants. Hall appeals.

III.
Directed verdicts are procedurally prescribed and proscribed by Rule 50(a) of the Mississippi Rules of Civil Procedure. The Comment to that Rule tells the trial court to look "solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury."
Many of our cases make the same point.
When the defendant moves for a directed verdict at the close of the plaintiff's case-in-chief, the circuit court must consider the evidence before it at that time in the light most favorable to the plaintiff, giving the plaintiff the benefit of all favorable inferences that may reasonably be drawn from that evidence. See Dale v. Bridges, 507 So.2d 375, 377 (Miss. 1987); Jones v. Hatchett, 504 So.2d 198, 205 (Miss. 1987); Collins v. Ringwald & Goddard, 502 So.2d 677, 678 n. 1-79 (Miss. 1987); Baker Service Tools, Inc. v. Buckley, 500 So.2d 970, 971-72 (Miss. 1986); Rucker, Stubbs Trucking v. Hopkins, 499 So.2d 766, 770 (Miss. 1986); Roosevelt Smith v. Estate of Lewis Gilbert, 498 So.2d 823, 825 (Miss. 1986); White v. Hancock Bank, 477 So.2d 265, 268-69 (Miss. 1985); Paymaster Oil Co. v. Mitchell, 319 So.2d 652, 657 (Miss. 1975).
Upton v. Magnolia Electric Power Association, 511 So.2d 939, 942-43 (Miss. 1987).
Our ground rules set, we move to the merits.

*799 IV.

A.
We consider first Hall's appeal of the judgment entered for Mack Trucks, Inc. The factual charge, in substance, is that the Mack diesel truck that was "idling" shortly before the fire was in a defective condition so that it was unreasonably dangerous. This is so, we are told, because the truck was not equipped with an emergency device which would automatically shut down the engine before igniting hydrocarbons.
The claim sounds in tort, strict liability variety. In State Stove Manufacturing v. Hodges, 189 So.2d 113 (Miss. 1966), this Court announced the elements of a strict liability claim by incorporating into our positive law the famous Section 402A, Restatement (Second) of Torts (1965). The rule reads:
1. One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
Brown v. Williams, 504 So.2d 1188, 1191 (Miss. 1987); Toliver v. General Motors Corp., 482 So.2d 213, 216 (Miss. 1985); Wittenberg, Products Liability: The Law In Mississippi § 4-4 (1982). Though a bystander, Hall is an eligible plaintiff under this rule. Coca Cola Bottling Co., Inc. v. Reeves, 486 So.2d 374, 378 (Miss. 1986).
Notions of fault and care  and privity as well  are beside the point. The rule applies although
(a) the seller has exercised all possible care in the preparation and sale of the product, and
(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.
The proper focus in a strict liability case is upon the utility and safety of the product in view of its intended function rather than on the manufacturer's fault or lack thereof.
Here, Hall has utterly failed to prove that the Mack truck was defective in the sense that it was not reasonably fit for its intended uses. Nor has he shown that without the automatic air shutdown device the truck was rendered unreasonably dangerous. To the contrary, the credible evidence is that the truck is perfectly safe and useful for its intended function without such a device.
There is nothing in the record to show that Mack was ever apprised that the truck was to be used for anything other than an over-the-road unit. As set forth in State Stove, the manufacturer is strictly liable in tort only if (a) he puts on the market a product which is defective and thus not reasonably safe and (b) the plaintiff is injured as a result of the contemplated use of the product. Until the plaintiff makes a prima facie demonstration that the product was unreasonably dangerous, attendant questions, such as causation, are of no consequence.
There is much talk in the papers that no manufacturers provided automatic emergency shutdown devices as a part of regular equipment on trucks similar to that at issue here. To be sure, such information is relevant to whether a product is reasonably fit or unreasonably dangerous to the user, consumer or bystander. See Restatement (Second) of Torts § 402A(1) (1965). Conformity with established industry standards, while evidence of whether a product is reasonably safe, may never be conclusive on the point. See The T.J. Hooper 60 F.2d 737, 740 (2d Cir.1932). Cf. Hall v. Hilbun, 466 So.2d 856, 871-72 (Miss. 1985). On the other hand, our law does not require that every manufacturer incorporate into his product every innovation which twenty-twenty hindsight suggests might have rendered the product more safe. See PPG Industries, Inc. v. Ashland Oil Co.  Thomas Petroleum Transit Division, 592 F.2d 138, 146 (3d *800 Cir.1978). Our law demands that products be reasonably fit, not perfectly so.

B.
Hall also argues that he has made out a jury issue on Mack's negligence. A prima facie case for negligence, of course, must include the following:
(1) plaintiff must be protected under some rule of law against defendant's conduct;
(2) credible evidence that the defendant violated this duty;
(3) a causal nexus between plaintiff's injury and defendant's conduct; and
(4) plaintiff must have suffered a loss. Ward v. Hobart Manufacturing Co., 450 F.2d 1176 (5th Cir.1971).
Mack Trucks, Inc., was under no duty to manufacture a truck with an automatic volatile air shutdown device installed, or to warn against operation without such a device. Moreover, there is no evidence tending to show that such a device, had it been installed, would have prevented the fire.
The judgment in favor of Mack Trucks, Inc., and against Hall is affirmed.

V.
The complaint against MCX alleged that it had "negligently operated a defective tanker in the area of the unloading process which directly caused or proximately contributed to the explosion" and that MCX "failed to maintain and service its vehicle in a proper condition and train its employees." The Circuit Court found as a matter of law that MCX was not negligent in failing to install an automatic shutdown device since "there is no proof in this record as to what would have actually occurred had the device been on the truck." The Court thus directed a verdict against Hall on his claim against MCX.
The standard for reviewing a directed verdict has been discussed above. As for the training of the drivers, the Court held that Hall's expert witness failed to "state any criteria under which their methods of training the drivers were negligent. He further failed to state that anything that the driver did on the day in question was negligent." And, inasmuch as the driver on that day did the very same thing that had been done 56,000 times before, "the act in and of itself is not negligent per se."
Here, again, the problem appears to be in proof of both breach of duty and causation. Hall's expert stated that idling the engine after the five minute run from MCX to Hess for "a minute or so would be perfectly adequate." Strebeck testified that when Davis stepped up on Strebeck's truck (and saw the flame) the truck had been idling no longer than 45 seconds to a minute. Thus, by the testimony of the Hall's own witness, the accident would not have been avoided had MCX trained its drivers to idle for only a minute after the MCX/Hess run. This is simply not the sort of stuff of which jury issues are made.
AFFIRMED
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.