**Myron BATTS, Plaintiff,**

**v.**

**TOW–MOTOR FORKLIFT COMPANY and Caterpillar Industrial, Inc., Defendants.**

**No. DC 88–71–D–D.**

United States District Court, N.D. Mississippi, Delta Division.

Feb. 8, 1994.

Charles M. Merkel, Jr., Clarksdale, MS, for plaintiffs.

John G. Corlew, Jackson, MS, for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This is a six-year-old products liability case which has come before the district court for a second trip. In March of 1991, this case was tried before the undersigned, and the jury returned a verdict in favor of defendants. Post trial motions for judgment notwithstanding the verdict, or alternatively for a new trial, were denied by the undersigned on April 30, 1991. Plaintiff appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed this district court in all respects. The opinion is reported by the Fifth Circuit at *Batts v. Tow–Motor Forklift Company, et al*, 978 F.2d 1386 (5th Cir.1992). The opinion was released on November 25, 1993, and the mandate issued on January 4, 1993. Now, plaintiff has returned to United States District Court under the auspices of Federal Rule of Civil Procedure 60(b)(6), Relief from Judgment, for "any other reason justifying relief from the operation of the judgment." The sum and substance of plaintiff's motion travels on the coattails of the Mississippi Supreme Court's decision in *Sperry–New Holland v. Prestage*, 617 So.2d 248 (Miss.1993). With *Prestage* as his sword, plaintiff asserts that this court incorrectly applied Mississippi products liability law, an error compounded by the Fifth Circuit's affirmance, when it instructed the jury on the open and obvious defense and the "consumer expectation test" consistent with the law of strict liability, Restatement (2d) 402A of the Law of Torts. As explained in this memorandum opinion, the court has now concluded that the jury was improperly instructed on Mississippi products liability law when this case went to trial in March of 1991. Faithful to our *Erie*[1] duty to apply state law as expressed by the highest court of this state, this court recognizes the "retroactive rule of *Prestage.*" As such, the motion for relief from judgment will be granted. Prior entry of judgment on April 3, 1991, will be vacated, and the case returned to this court's active docket. Before discussing the merits of the motion as advanced by the plaintiff, the court presents some additional background facts which help complete the picture for the issues that the court addresses today.

### Background

In August of 1984, Myron Batts was employed by Flavorite Laboratories, Inc., where he operated a type of forklift referred to as a "tugger."[2] The room where Batts worked was often noisy, and at least one other motorized forklift operated in the same room. The second motorized lift was operated by a seated driver using controls to his front where the forks were located. On the day in question, Charles Johnson was driving the motorized lift in reverse when he backed into Myron Batts, resulting in injury. At the time of the collision, Batts was working with his lift and was either walking beside or backwards with the tugger. Batts brought suit alleging that the forklift should have had a back-up alarm, flashing warning lights, and/or rearview mirrors. According to Batts, the absence of such warning devices entitled him to recover under either strict liability in tort (defective condition unreasonably dangerous), failure to warn, negligent manufacture, or breach of implied and express warranties. Caterpillar's principal defense was that the danger of operating a forklift (the tugger) while not facing in the direction of travel of the operator driven lift was an open and obvious danger. To this end, such open and obvious danger was a complete bar to recovery under Mississippi law.

The trial of this case was conducted before the undersigned on March 25–29, 1991. The jury was instructed on the "open and obvious" defense, sometimes referred to as the "patent danger" rule. In his brief supporting his Rule 60(b)(6) motion, plaintiff asserts that he argued for a "risk utility" instruction in lieu of the consumer expectation test and the inherent "open and obvious" rule. While the court is not disputing this assertion in the absence of a complete transcript of the

---

1. *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 28 U.S.C. § 1652.

2. A "tugger" is a motorized lift, but it is not driven by an operator. The operator walks behind the lift and guides it.

jury instruction conference, the undersigned merely notes that the record which plaintiff has furnished does not reflect a request for the "risk utility" test. In any event, the point is academic. For the record does indicate that Batts entered several objections to the court's instruction on the "open and obvious" defense. In the case *sub judice*, the jury returned a verdict for defendant finding the "open and obvious" defense to be a complete bar to recovery. Post trial motions for j.n.o.v. and new trial predicated upon the court's charge to the jury were denied by the undersigned. Appeal was taken to the United States Court of Appeals for the Fifth Circuit. On appeal, Batts argued that this court committed reversible error when it instructed the jury on the "open and obvious" defense. The Fifth Circuit rejected the argument and affirmed the judgment of this court holding that the undersigned had correctly instructed the jury on Mississippi products liability law. *See Batts v. Tow-Motor Forklift Co.*, 978 F.2d 1386 (5th Cir. 1992).[3] The discussion which follows completes the procedural history of this case which has new life following the Mississippi Supreme Court's decision in *Sperry New-Holland v. Prestage*, 617 So.2d 248 (Miss. 1993).

## *Discussion*

In 1966, Mississippi adopted the doctrine of strict liability in tort. *See State Stove Manufacturing Co. v. Hodges*, 189 So.2d 113, 119 (Miss.1966). With the adoption of strict liability, the Mississippi Supreme Court no longer required "privity of contract" between the manufacturer of a product and the ultimate consumer, and the plaintiff was relieved of the burden of proving negligence. Fault (negligence) is supplied as a matter of law. *Toliver v. General Motors*, 482 So.2d 213, 215 (Miss.1986); *State Stove*, 189 So.2d at 121. With *State Stove*, the court adopted the statement of strict liability as expressed in Section 402A of the American Law Institute's Restatement of Torts (Second). Section 402A provides as follows:

**3.** A petition for rehearing was denied *en banc* on December 23, 1992.

(1) One who sells any product in a *defective condition unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965). (emphasis added).

## *Products Liability Standards*

### *A. Consumer Expectation Test*

As noted in *Prestage*, the Mississippi court has had numerous opportunities to apply strict liability since its adoption in 1966.[4] According to *Prestage*, 402A is "still the law" in Mississippi. However, there is a distinction with a difference with regard to the defining parameters of "defective condition" and "unreasonably dangerous" as expressed in section 402A(1). Comment (i) to Section 402A of the Restatement (Second) of Torts describes "unreasonably dangerous" as follows: "The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Comment g describes "defective condition" as one, "where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." This standard for liability is known as the "consumer expectation test." In order for a plaintiff to recover under the

**4.** *See Sperry New-Holland v. Prestage*, 617 So.2d 248, 253 n. 1 (Miss.1993) (court cites twenty-nine cases where it has applied 402A principles).

"consumer expectation test," he or she must prove that injury was caused by a defect in the product which the plaintiff would not know to be unreasonably dangerous. Stated differently, if the plaintiff, in applying the knowledge of an ordinary consumer in the community, sees a danger associated with a product and can appreciate that danger, then there can be no recovery from any injury that resulted from the appreciated danger. *Prestage*, 617 So.2d at 254. "A product that has an open and obvious danger is not more dangerous than contemplated by the consumer, and hence cannot, under the consumer expectation test applied in Mississippi, be unreasonably dangerous." *Toney v. Kawasaki Heavy Industries, Ltd.*, 975 F.2d 162, 165 (5th Cir.1992), quoting *Melton v. Deere & Co.*, 887 F.2d 1241, 1243 (5th Cir.1989). As noted in *Prestage*, the United States District Courts in Mississippi, as well as the Fifth Circuit Court of Appeals, have consistently held that Mississippi employs the "consumer expectation test" with its inherent "open and obvious" standard in products liability cases. By way of illustration, *Prestage*, at 617 So.2d page 254, cites four recent decisions from the Fifth Circuit wherein the "consumer expectation test" was applied to products liability actions. See *Batts v. Tow–Motor Forklift Co.*, 978 F.2d 1386 (5th Cir.1992); *Toney v. Kawasaki Heavy Industries, Ltd.*, 975 F.2d 162 (5th Cir.1992); *Melton v. Deere & Co.*, 887 F.2d 1241 (5th Cir.1989); *Gray v. Manitowoc Co., Inc.*, 771 F.2d 866 (5th Cir.1985). *Prestage* seems to leave the impression that the federal courts have been all alone in applying the "consumer expectation" test in products liability law. Of course, this impression would be erroneous as reference to the following cases will demonstrate. See *e.g.*, *Kussman v. V & G Welding Supply, Inc.*, 585 So.2d 700 (Miss.1991); *Brown v. Williams*, 504 So.2d 1188 (Miss.1987); *Coca Cola Bottling Co., Inc. of Vicksburg v. Reeves*, 486 So.2d 374 (Miss.1986); *Pargo v. Electric Furnace Co.*, 498 So.2d 833 (Miss.1986); *Fortenberry Drilling Co., Inc. v. Mathis*, 391 So.2d 105 (Miss.1980); *Jones v.* *Babst*, 323 So.2d 757 (Miss.1975); *Ford Motor Co. v. Matthews*, 291 So.2d 169 (Miss.1974).

## B. Risk–Utility Test

■ The alternative definition for "unreasonably dangerous" and "defective condition" is found in the so called "risk-utility" analysis. In *Sperry–New Holland v. Prestage*, 617 So.2d 248, 254 (Miss.1993), the state supreme court described risk-utility as follows:

In a 'risk-utility' analysis, a product is 'unreasonably dangerous' if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. Thus, even if a plaintiff appreciates the danger of a product, he can still recover for any injury resulting from that danger provided that the utility of the product is outweighed by the danger that the product creates. Under the 'risk-utility' test, either the judge or the jury can balance the utility and danger-in-fact, or risk, of the product. Steven G. Davison, *The Uncertain Search for a Design Defect Standard*, 30 Amer. Univ.L.R. 643, 654 (1981); See also John W. Wade, *On the Nature of Strict Tort Liability for Products*, 44 Miss.L.J. 825 (1973).

*Prestage*, 617 So.2d at 254.

*Prestage* was decided by the state supreme court on March 25, 1993. On this date, the Mississippi Supreme Court let the rest of the world in on the best kept secret in Mississippi jurisprudence. In *Prestage*, the court announced that five years earlier, in 1988, Mississippi products liability law had changed from the "consumer expectation" approach to the "risk-utility" test for defining "unreasonably dangerous" and "defective condition" as those terms are utilized in 402A. According to the court, it had adopted new law with its decisions in *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss.1988), and *Hall v. Mississippi Chemical Express, Inc.*, 528 So.2d 796 (Miss.1988).[5] The *Prestage* court was careful to note that it was not announcing a new rule of decisional law. Instead, the court proclaimed, presumably with a straight face,

---

5. *Hall* and *Whittley* were both decided in 1988. In *Prestage*, *Hall* is cited as a 1987 decision, 617 So.2d at 253; and *Whittley* is cited as a 1985 decision, 617 So.2d at 255. Apparently, these were errors in proofreading.

that Mississippi products liability law had changed with *Hall* and *Whittley* five years earlier; and the federal courts had erred in not recognizing the change.

This Court has clearly moved away from a 'consumer expectations' analysis and has moved towards 'risk-utility.' Consistent with the national trend, the *two most recent decisions* of this Court applied a 'risk-utility' analysis to strict products liability.

*Sperry–New Holland v. Prestage*, 617 So.2d 248, 256 (Miss.1993). (emphasis in original).[6] In addition to the above quoted text, the court apparently sought to remove any speculation or debate by the federal courts that the change in law did not occur with *Prestage*, but rather the change had occurred in 1988. Writing for the court, Justice Prather stated, "recent decisions have turned on an analysis under 'risk-utility.'" *Prestage*, 617 So.2d at 252. "We today apply a 'risk-utility' analysis *as adopted* in *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss.1988) and *Hall v. Mississippi Chemical Exp., Inc.*, 528 So.2d 796 (Miss.1988) . . . ." *Prestage*, 617 So.2d at 253. (emphasis added). Of course, the most significant difference between "consumer expectation" and "risk-utility" is the merger of "open and obvious" into the risk-utility dichotomy. For the case *sub judice,* this is the major distinction which supports plaintiff's Rule 60(b)(6) motion. *Prestage* explains the "open and obvious" role in the "risk-utility" test for unreasonably dangerous products.

Having here reiterated this Court's adoption of a 'risk-utility' analysis for products liability cases, we hold, necessarily, that the 'patent danger' bar is no longer applicable in Mississippi. Under a 'risk-utility' analysis, the 'patent danger' rule does not apply. In 'risk-utility,' the openness and obviousness of a product's design is simply

a factor to consider in determining whether a product is unreasonably dangerous.

*Prestage,* 617 So.2d at 256 n. 4 (citing Wade, 44 Miss.L.J. 837–838; W. Keeton, D. Dobbs, R. Keeton, and D. Owen, *Prosser and Keeton on the Law of Torts* § 99 at 698–99 (5th ed. 1984)).

Typically, jurisdictions which apply "risk-utility" do so only in defective design cases. Under a "risk-utility" theory, a jury may find a product unreasonably dangerous if its design contains excessive danger which could have been prevented. In other words, a product is unreasonably dangerous if the design's inherent risk of danger outweighs the benefit of the design. 63 Am.Jur.2d *Products Liability* § 546 (1984). Despite the fact that "risk-utility" is usually associated with design defect cases only, *Prestage* makes no such distinction and appears to embrace "risk-utility" in all strict liability situations. In time, perhaps the supreme court will provide further clarification.[7]

Since *Hall* and *Whittley* have now taken on the presence of landmark cases in Mississippi tort law, both merit a second look as the federal court looks for guidance in proceeding with its *Erie* duty to apply state law when hearing federal diversity cases. *Hall v. Mississippi Chemical Express, Inc.,* 528 So.2d 796 (Miss.1988), concerned an appeal from a directed verdict for defendant at the close of plaintiff's case-in-chief. The supreme court affirmed the Lamar County Circuit Court. The primary issue on appeal turned on factual support in the record linking causation of a fire, which injured the plaintiff, to two defendants. In affirming the lower court, the supreme court agreed with the trial court's finding that the defendants' connection with the fire was simply "too tenuous."

---

**6.** The court's claim that its two most recent decisions had applied "risk-utility" is a misstatement and is simply not accurate. As it will be discussed subsequently, the most recent decision prior to *Prestage* which addressed the issue applied the "consumer expectation" test. *See Kussman v. V & G Welding Supply, Inc.,* 585 So.2d 700, 703–04 (Miss.1991). As the citation indicates, *Kussman* was decided in 1991, three years after *Hall* and *Whittley.*

**7.** *See Miss.Code Ann.* § 11–1–63(a), (b), (f) (Supp. 1993) (Mississippi Products Liability Act enacted by the 1993 Mississippi Legislature incorporates both "consumer expectation" and "risk-utility" language for defective design cases); *see also* § 11–1–63(e) (open and obvious defense retained in failure to warn cases).

The case is now down to two possible defendants—the manufacturer and owner/operator of the diesel truck whose 'idling' is said to have ignited the conflagration and caused plaintiff's concededly serious injuries. The facts make clear that factually and legally these defendants' connection with the case is just too tenuous. The Circuit Court directed a verdict at the end of plaintiff worker's case. We affirm.

*Hall*, 528 So.2d at 797. Both in the lower court and on appeal, *Hall* turned on the element of causation. Nothing in the case at either the trial or appellate level even remotely brought "consumer expectation" versus "risk-utility" approaches to section 402A(1) into issue. In commenting on plaintiff's theory of defective design of a Mack diesel truck engine, Justice Robertson noted that notions of fault and privity are not considered under strict liability theories of recovery. *Hall*, 528 So.2d at 799. Then, the following two paragraphs appear in the opinion.

> The proper focus in a strict liability case is upon the utility and safety of the product in view of its intended function rather than on the manufacturer's fault or lack thereof.

> Here, Hall has utterly failed to prove that the Mack truck was defective in the sense that it was not reasonably fit for its intended uses. Nor has he shown that without the automatic air shutdown device the truck was rendered unreasonably dangerous. To the contrary, the credible evidence is that the truck is perfectly safe and useful for its intended function without such a device.

*Hall*, 528 So.2d at 799. Now the *Prestage* court is claiming that with the use of the word, "utility," in the opinion, it took a giant leap and extrapolated a landmark adoption of the "risk-utility" test for products liability law and rejected the "consumer expectation" standard of the past twenty-two (22) years.

In *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss.1988), the trial judge granted a directed verdict in favor of a garbage bin manufacturer after all of the parties had rested. The jury returned a verdict in favor of the City of Meridian. The plaintiff, a small child who sustained severe injuries when a garbage bin fell on her, appealed from the dismissal of the manufacturer and the jury verdict for the city. *Whittley*, 530 So.2d at 1342. Writing for the court, Justice Zuccaro concluded that the trial judge erred in directing a verdict for the manufacturer. Following a discussion of section 402A of the Restatement (Second) of Torts and plaintiff's claim of defective design of the garbage bin, the court stated:

> In determining whether a product is unreasonably dangerous a reasonable person must conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product. This is a question for the finder of fact.

*Whittley*, 530 So.2d at 1347. Following this paragraph which also employs the word, "utility," the opinion then launched into a discussion of superseding causes. *Whittley*, 530 So.2d at 1347. Therefore, based upon these comments contained in *Hall*, and in *Whittley*, the Mississippi Supreme Court proclaimed in *Prestage* that "risk-utility" had been forever adopted in Mississippi products liability law.[8] *Prestage*, 617 So.2d at 253.[9]

Despite the "adoption" of "risk-utility" in *Hall* and *Whittley*, the court apparently had a change of heart, although shortlived, when

8. *Hall v. Mississippi Chemical Express, Inc.*, 528 So.2d 796 (Miss.1988), was originally released on May 10, 1988. However, a petition to rehear was filed, which was denied on August 10, 1988. According to Mississippi Supreme Court Rule 41(a), the filing of a petition to rehear will stay the mandate until disposition of the petition. If the petition is denied, as in this case, the mandate will issue seven (7) days after entry of the order denying the petition. *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss.1988) was also released on August 10, 1988, perhaps by coincidence or by design. No petition to rehear was filed in *Whittley*. Therefore, it appears to the court that the change in Mississippi products liability law occurred on or about August 10, 1988.

9. *See Satcher v. Honda Motor Co., Ltd.*, 993 F.2d 56 (5th Cir.1993) (Fifth Circuit Order by Judge Jolly granting petition to rehear, vacating court's opinion at 984 F.2d 135, and remanding to Southern District of Mississippi). The order of remand appears to recognize the retroactive application of *Prestage*. *Satcher*, 993 F.2d at 57.

it decided *Kussman v. V & G Welding Supply, Inc.,* 585 So.2d 700 (Miss.1991). Kussman suffered extensive injuries when he fell from a roof after he was shocked by an electric wrench that had recently been repaired by V & G Welding. Kussman sued V & G Welding for negligent repair of the wrench. The case proceeded to trial, and at the close of all the evidence the court granted a directed verdict in favor of V & G. On appeal, the supreme court reversed and remanded for a new trial finding that the directed verdict was improvidently granted. *Kussman,* 585 So.2d at 705. Although *Kussman* concerned an action in negligence and not one involving a design defect, the court, nonetheless, entered into a discussion of strict products liability standards for defective conditions. Citing pertinent parts of 402A comments, the *Kussman* court stated:

> Restatement (Second) of Torts § 402A, Comment (g), at 351 (1965) states:
>
>> The rule stated in this Section applies only where the product is, at the time it leaves the seller's hand, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.
>
> Rest. (2d) Torts § 402A, Comment (i), at 352 (1965) discusses 'unreasonably dangerous' in these terms:
>
>> The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

*Kussman,* 585 So.2d at 703–04, citing *Ford Motor Co. v. Matthews,* 291 So.2d 169, 172 (Miss.1974). Of course, this is the classic statement of the consumer expectation test, "adopted" by the Mississippi court three years following *Hall* and *Whittley.* Interestingly, *Kussman* is neither cited nor mentioned in *Prestage. Kussman* has been swept under a rug and ignored. *Erie* bound, this court is obligated to do the same.

### *Rule 60(b)(6) Criteria*

█  Batts has moved for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b)(6). The Rule provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: ... (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time. ...

In the case *sub judice,* the Rule 60(b)(6) motion was filed on or about April 19, 1993. This was less than a month following the court's release of *Prestage,* which gave the first indication that grounds for a 60(b)(6) motion existed. Clearly, the filing was accomplished within a reasonable time. The other factors which are pertinent to a Rule 60(b) motion were discussed in detail in a 1981 Fifth Circuit case, *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396 (5th Cir.1981), the most frequently cited opinion for the governing standards for 60(b) relief. The factors for consideration are as follows:

> (1) That final judgments should not lightly be disturbed; (2) that the Rule 60(b) motion is not to be used as a substitute for appeal; (3) that the rule should be liberally construed in order to achieve substantial justice; (4) whether the motion was made within a reasonable time; (5) [relevant only to default judgments]; (6) whether—if the judgment was rendered after a trial on the merits—the movant had a fair opportunity to present his claim or defense; (7) whether there are intervening equities that would make it inequitable to grant relief; and (8) any other factors relevant to the justice of the judgment under attack.

*Seven Elves, Inc.,* 635 F.2d at 402. The *Seven Elves* criteria for Rule 60(b) relief are consistently followed. *See U.S. v. Flores,* 981 F.2d 231, 237 (5th Cir.1993); *Barrs v. Sullivan,* 906 F.2d 120, 121 (5th Cir.1990); *Picco v. Global Marine Drilling Co.,* 900 F.2d 846, 849 (5th Cir.1990); *Smith v. Alumax Extrusions, Inc.,* 868 F.2d 1469, 1471 (5th Cir. 1989); *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind,* 841 F.2d 646, 649 (5th Cir.1988).

The court has considered Batts' Motion for Relief from Judgment in light of the *Seven*

*Elves* factors and mindful that Rule 60(b)(6) relief from judgment is reserved for extraordinary circumstances. Obviously, the respect for the finality of judgment must be weighed against the court's principal interest that substantial justice be achieved with each case. To this end, this case falls within that "extraordinary" category—if not bizarre. To say the least, the federal courts, and perhaps a few state courts as well, were surprised to learn in March of 1993 that state law had been misinterpreted and misapplied for the past five years. The court trusts that the basis of this surprise is adequately explained in this memorandum opinion.

### Conclusion

For the reasons which are explained in this opinion, Myron Batts' Motion for Relief from Final Judgment pursuant to Rule 60(b)(6), is well taken, and the same will be granted by separate order to issue this day. This court's final judgment in the case *sub judice* entered on or about April 3, 1991, is vacated, and the case is returned to the undersigned's active docket.