# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 98-CA-00759-SCT

*DOROTHY M. SMITH, R. C. KILCREASE, JR., ROBERT EDGAR KILCREASE AND ROGER DALE RUFFIN*

*v.*

*MACK TRUCKS, INC. AND JACKSON MACK SALES, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/17/1998 |
| TRIAL JUDGE: | HON. L. BRELAND HILBURN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | BO ROLAND |
| | STEVEN MARK WANN |
| | MARIE M. FYKE |
| ATTORNEYS FOR APPELLEES: | H. MITCHELL COWAN |
| | KEITH R. RAULSTON |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | REVERSED AND REMANDED - 6/20/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/11/2002 |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1. Jeffery Kilcrease died as a result of a single-vehicle log truck accident on November 6, 1991. His wrongful death beneficiaries filed suit against Mack Trucks, Inc. and Jackson Mack Sales, Inc. in Hinds County Circuit Court on March 2, 1993. The complaint alleged that the Mack truck Kilcrease was driving at the time of the accident had a defective brake system. On July 1, 1994, the plaintiffs filed an amended complaint alleging that the fuel tank system on the Mack truck was defectively designed, thus abandoning their theory that the brake system was defective.

¶2. On March 13, 1998, the jury returned a unanimous verdict in favor of the defendants, and judgment

was entered accordingly. Plaintiffs now appeal citing the following issues:

**I. WHETHER THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR BY GRANTING DEFENDANTS' JURY INSTRUCTION D-2, WHICH INCORRECTLY STATED THE SUBSTANTIVE LAW OF STRICT PRODUCTS LIABILITY USING THE MISSISSIPPI PRODUCTS LIABILITY ACT.**

**II. WHETHER THE CIRCUIT COURT'S JURY INSTRUCTIONS AS A WHOLE WERE PREJUDICIAL AND CONSTITUTED REVERSIBLE ERROR.**

## FACTS

¶3. On November 6, 1991. Kilcrease was driving his 1978 R Model Mack truck in Lauderdale County, pulling a trailer loaded with pine logs, when the truck's tire blew out. The truck crashed into several pine trees and caught on fire.

¶4. First on the scene, traveling U.S. Highway 80 west approximately one-quarter mile behind the decedent's truck were John Caudil and his sister, Rachel, who, after turning briefly to waive at neighbors, noticed that Kilcrease's truck had left the road. After driving approximately one-half mile to the point where his truck had left the highway, they stopped, and Rachel walked down to the truck to see if anyone was alive. She heard a responsive moan. Caudil testified that he observed no evidence of fire when he first arrived at the scene and left to get help. Rachel stayed and attempted to pull Kilcrease from the wreckage when she began to hear sounds that indicated the beginning of a small fire. She explained:

After I worked my way to him, I tried pulling him out. I then began to hear small little twigs burning, you know, like a fire beginning to start. John had already left at that time. . . It was like pine straw and little pine limbs burning. It wasn't - a fizz. It wasn't an explosion. It was small . . . The best- - it was, you know, small little pine needles beginning to burn, - - small noises, you know, not a big noise, very quite noise like, but it was little bit like pine.

¶5. In March of 1993, plaintiffs filed a complaint alleging that a defective, unreasonably dangerous, and unmerchantable condition within the brake system of the Mack truck, caused Kilcrease to collide. In an amended complaint filed on July 1, 1994, plaintiffs retreated from the defective brake theory and charged Kilcrease's death was the proximate result of a defective and unreasonably dangerous fuel tank system, existing at the time the Mack truck was sold by the defendant. The theory was that the fire was caused by leakage or escaped diesel fuel from fuel tanks in the truck, in conjunction with ignition or heat sources, such as exhaust pipes or electrical batteries, located in close proximity to the fuel tanks. As a result, the driver's compartment of the Mack truck was engulfed with fire causing Kilcrease to suffer severe burns over most of his body, amputation of three limbs and ultimately his death in December of 1991.

¶6. At trial, competing expert testimonies were presented concerning the plaintiffs' theory. One expert testified the fire began because the exhaust pipe was placed too close to the passenger side diesel tank, which generated excessive heat inside the tank. The excessive heat increased the pressure in the tank causing the fuel to spray on the batteries when the passenger side fuel tank was ruptured during the accident. Within seconds, a spark from the batteries ignited the diesel fuel hole in the passenger side tank, thereby causing the fire. Plaintiffs' second expert, however, disagreed that the exhaust pipe increased the pressure in the passenger side fuel tank or had anything to do with causing the fire; suggesting rather, that

several fires may have been initiated in different places and determining, ultimately, that the fire was caused by an electrical failure near the passenger fuel tank. The plaintiffs argued notwithstanding that even though it may not be perfectly clear where the fire was started, it was clearly caused by a defective design.

¶7. Mack Trucks asserted that due to the extensive damage to the truck, a single cause of the fire was unidentifiable. Given the conditions of the accident scene-- the truck coming to rest in thick pine straw, on a warm dry day, with large amounts of motor oil, power steering fluid, antifreeze and diesel fuel from either side of the fuel lines or tanks dispersing-- a number of potential causes for the fire existed. Most likely, according to Mack Trucks, the combination of dry pine straw and flammable liquids ignited from the truck's hot engine surface or from arcing electrical wiring, severed during the accident, caused the fire.

¶8. The jury returned a verdict in favor of defendants. Aggrieved, the plaintiffs appeal, asserting that the trial court erred in giving two alternative and inconsistent theories of substantive law in its instructions to the jury.

## STANDARD OF REVIEW

¶9. This appeal involves an inquiry as to the product liability law applicable to the instant case and whether the circuit court correctly applied that law. The trial court has broad discretion in instructing the jury, and this Court will not reverse, even if the instruction is erroneous, when the evidence is overwhelmingly in favor of the prevailing party and there has been no miscarriage of justice. *Smith v. Jones,* 335 So. 2d 896, 897 (Miss. 1976). Where two or more instructions are in hopeless and substantive conflict, the Court may reverse. *Payne v. Rain Forest Nurseries, Inc.* 540 So. 2d 35, 40-41 (Miss. 1989).

### I. WHETHER THE CIRCUIT COURT COMMITTED REVERSIBLE ERROR BY GRANTING DEFENDANTS' JURY INSTRUCTION D-2, WHICH INCORRECTLY STATED THE SUBSTANTIVE LAW OF STRICT PRODUCTS LIABILITY USING THE MISSISSIPPI PRODUCTS LIABILITY ACT.

¶10. On March 25, 1993, this Court adopted the risk-utility test for determining whether a product is defective and unreasonably dangerous. *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993). Soon thereafter, the Legislature passed the Products Liability Act, Miss. Code Ann. § 11-1-63 (Supp. 2001), codifying strict products liability law. Procedural provisions of the Act became effective for all cases pending on July 1, 1993, but the remaining substantive provisions took effect on July 1, 1994, the same date the plaintiffs' amended complaint was filed.

¶11. Plaintiffs contend the trial court committed reversible error in giving Jury Instruction D-2 because it is an application of a substantive provision of Mississippi's Products Liability Act, Miss. Code Ann. § 11-1-63, a provision, which they argue essentially adopted the consumer expectation analysis for product liability cases. They argue that the court, therefore, committed reversible error because, pursuant to the Act's mandate, their case was subject to the statute's procedural provisions only.

¶12. Instruction D-2 reads as follows:

You cannot find that the Mack Truck was defectively designed if the harm for which the Plaintiffs seek damages was caused by an inherent characteristic of the truck which is a generic aspect of the truck that cannot be eliminated without substantially compromising the truck's usefulness or desirability and which is recognized by the ordinary person with ordinary knowledge common to the community.

¶13. The Products Liability Act, Miss. Code Ann. § 11-1-63 (1)(b), provides in pertinent part that:

> (b) A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

¶14. Presenting the jury with Instruction D-2's "consumer expectation" standard as codified in the Act was error, the plaintiffs argue, because the statutory notes of Miss. Code Ann. § 11-1-63, as follows, indicate that only the procedural provisions of the Act applied while the case was pending. It reads:

> This act shall take effect and be in force from and after July 1, 1993. Procedural provisions of this act including subsections (1) (a), (b),(c) and (d) of Section 2 shall apply to all pending actions in which judgment has not been entered on the effective date of the act and al actions filed on or after the effective date of the act. *All other* provisions shall apply to all actions filed on or after July 1, 1994.

(emphasis added).

¶15. Mack Trucks does not directly respond to plaintiffs' contention that only the procedural provisions of the statute were applicable except to underscore that plaintiffs' amended complaint substituted a new theory for the cause of the accident on the same date that the Act's substantive provisions were scheduled to go into effect. The apparent significance being, that the plaintiffs changed their theory of liability by substituting the fuel tank theory for the defective brake theory as the proximate cause of the accident, or rather, the fire. The claim then was that the truck was not crash worthy, a theory based upon a completely different set of strict liability principles.

¶16. As plaintiffs contend, however, it is well established that an amended complaint, pursuant to Miss. R. Civ. P. 15(c), relates back to the date of the filing of the original complaint. *Universal Computer Servs., Inc. v. Lyall*, 464 So. 2d 69, 74 (Miss. 1985). This case is subject only to the procedural provisions of the Act as plaintiffs filed suit on March 2, 1993, clearly before the Act was enacted on July 1, 1993.[1] Plaintiffs submit that it remains unclear what substantive products liability law applied, but argue the risk-utility standard adopted in *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993), is the controlling law.

¶17. Under the risk-utility theory, a plaintiff may recover for any injury as a result of the use of a dangerous product, provided that the utility of the product is outweighed by its danger. In balancing a product's utility against the risk of injury it creates, the factors to be considered are:

> (1) The usefulness and desirability of the product--its utility to the user and to the public as a whole.

> (2) The safety aspects of the product--the likelihood that it will cause injury, and the probable seriousness of the injury.

> (3) The availability of a substitute product which would meet the same need and not be as unsafe.

> (4) The manufacturer's ability to eliminate the unsafe character of the product without impairing its

usefulness or making it too expensive to maintain its utility.

(5) The user's ability to avoid danger by the exercise of care in the use of the product.

(6) The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions.

(7) The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

*Id.* at 256.

¶18. In contrast, under the "consumer expectations" theory, a plaintiff could not recover for a product which caused injuries if he, applying the knowledge of an ordinary consumer saw a danger and could have appreciated that danger. *Id.* at 254. The ordinary consumer's contemplation is the focus of the inquiry into the degree of danger presented by a product. In *Prestage*, this Court determined that, like most federal and state jurisdictions, however, the Court had clearly moved away from a consumer expectations analysis towards risk utility. *Id*. at 256.

¶19. Mack Trucks argues, nevertheless, that there is no basis under our law for the application of the risk-utility test. In support, it cites *Cooper v. General Motors Corp*., 702 So. 2d 428, 443 (Miss. 1997), which was decided after *Prestage*. There, the plaintiffs, in light of *Prestage*, advocated that risk-utility, not consumer expectations, be applied because it was "not so much that they were 'expecting,' but that the 'risk' of driving a 1984 car without an air bag outweighed its 'utility'." *Id.* at 442. What Mack Trucks argues, however, is that this Court affirmed the application of the consumer expectations test because it was the law in Mississippi in 1992. Since the plaintiffs here likewise filed suit prior to *Prestage,* in 1991 to be exact, Mack Trucks asserts that consumer expectation is the controlling standard, not risk-utility.

¶20. On the contrary, we find express language in *Prestage* which contradicts that argument. In rejecting the Fifth Circuit's representation that consumer expectation was still the basis for products liability in Mississippi, we stated in *Prestage:* "We today apply a 'risk-utility' analysis as *adopted* in *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss. 1988) and *Hall v. Mississippi Chemical Exp., Inc.*, 528 So. 2d 796 (Miss. 1987) and write to *clarify* our reasons for the adoption for that test." 617 So. 2d at 253 (emphasis added).

¶21. That said, to characterize the law of 1992, as the parties have here, is to suggest that the Court's declarations of law are like statutes when the opposite is true. Unless the Court directs otherwise, declarations of law are given retroactive effect. *See Prestage*. Because *Prestage's* declaration clearly approved the risk utility standard and was in no way prospective only, we find that Mack Trucks' argument is without merit. In sum, plaintiffs are correct in their contentions that only the procedural provisions of Products Liability Act and that risk utility is the controlling standard. Therefore, the circuit court committed reversible error.

## II. WHETHER THE CIRCUIT COURT'S JURY INSTRUCTIONS AS A WHOLE WERE PREJUDICIAL AND CONSTITUTED REVERSIBLE ERROR.

¶22. Plaintiffs contend the trial court committed reversible error in instructing the jury on both risk utility (P-

4) and consumer expectation standards (D-2), because these two alternate standards comprise the substantive analyses by which courts determine products liability and are in conflict. That the jury was instructed to reach a verdict using two completely different standards of law which, read together, in no way reasonably represent the applicable law, was erroneous.

¶23. Instruction P-4 reads:

You are instructed that one who sells a product in a defective condition unreasonably dangerous to the user or consumer of the product or to his property is liable for physical harm the product may cause to the user or consumer, or to his property, if the seller was engaged in the business of selling such a product, and the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

Accordingly, if you find from a preponderance of the evidence in this case that:

1. Mack Trucks, Inc. and or/Jackson Mack Sales, Inc. were in the business of selling the Mack Truck and did in fact sell the Mack Truck:

2. The Mack Truck was at the time of the sale in a defective condition unreasonably dangerous to the user or consumer o the product or to his property;

3. The Mack Truck was expected to and did reach the user or consumer without substantial change in the condition in which it is sold;

4. Jeffery D. Kilcrease was injured while the Mack Truck was being used in manner and for a purpose for which the product was intended and which was reasonably foreseeable by Mack Trucks, Inc. and/or Jackson Mack Sales, Inc. and

5. The defective condition of the product was the sole cause or proximate contributing cause of the resulting injury or damage; then your verdict shall be for the Plaintiffs.

However, if you find that the plaintiffs have failed to prove any of these five elements by a preponderance of the evidence in this case, then your verdict shall be for the Defendants.

You are further instructed that, under Mississippi law, accidents are always foreseeable to manufacturers.

In the circumstances stated above, it is not a valid defense that Mack Trucks, Inc. and Jackson Mack Sales, Inc. exercised all possible care in preparing and selling the product. Mack Trucks, Inc., had a duty to make its product reasonably safe, regardless of whether Jeffery D. Kilcrease is aware of its dangerousness.

Also, in the circumstances stated above, it is not a valid defense that Jeffery D. Kilcrease neither brought the Mack truck nor contracted with Mack Trucks, Inc. or Jackson Mack Sales, Inc.

Additionally, compliance with the federal standards governing Class 8 heavy trucks does not protect Mack Trucks, Inc., from liability for design defects in connection with matters not covered by the federal standards. Stated more simply, you have a sworn duty to find for the plaintiffs in this case if you find that:

1. The Mack truck was in a defective condition, unreasonably dangerous to Jeffery D. Kilcrease;

2. The defect existed when Mack Trucks, Inc., and/or Jackson Mack Sales, Inc., sold the Mack truck; and

3. Jeffery D. Kilcrease was injured and ultimately killed by that defect.

¶24. D-2, reads in its entirety as follows:

The Plaintiffs allege that the Mack truck was defectively designed because the fuel tanks and batteries were improperly located and/or the fuel tanks were inadequately guarded or protected. the Court instructs the jury that the Plaintiffs cannot prevail on their claim of defective design unless they prove by a preponderance of the evidence each of the following: (1) that the Mack Truck was designed in a defective manner; (2) that the alleged defective condition rendered the truck unreasonably dangerous to its users; and (3) that the alleged defective and unreasonably dangerous condition of the truck proximately caused the Plaintiffs's damages.

***You cannot find that the Mack Truck was defectively designed if the harm for which the Plaintiffs seek damages was caused by an inherent characteristic of the truck which is a generic aspect of the truck that cannot be eliminated without substantially compromising the truck's usefulness or desirability and which is recognized by the ordinary person with ordinary knowledge common to the community.***

In addition, you cannot hold Mack Trucks and Jackson Mack liable for defective design unless the Plaintiffs prove by a preponderance of the evidence each of the following: (1) that Mack Trucks and Jackson Mack knew, or in light of reasonably available knowledge, or in the exercise of reasonable care should have know, about the alleged danger regarding the fuel tanks and batteries, (2) that the truck failed to function as expected by its users; and (3) that there existed a feasible design alternative that would have to be a reasonable probability prevented the injuries to Jeffery Kilcrease. A feasible design alternative is a design that to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the truck to its users.

If the Plaintiff fails to prove even of these elements, then it is your sworn duty to return a verdict for Mack Trucks and Jackson Mack on the Plaintiffs' claim of defective design.

(emphasis added).

¶25. The second paragraph of D-2, which parallels the Act is the most relevant to the Court's inquiry. Mack Trucks argues that this language is not merely a recitation of the consumer expectations test because the Products Liability Act combines elements of both the risk-utility and consumer expectation analyses. Section 1(b) of the Act, for example, includes both risk-utility- "usefulness or desirability" and consumer expectation -"ordinary person with ordinary knowledge common to the community" language. This suggests a bifurcated approach for determining whether a product is defective in design and unreasonably dangerous. One commentator has agreed, stating that:

Section 1(b) relieves a manufacturer of liability for harm caused by an inherent characteristic of the product if, but only if, (1) such aspect of the product cannot be eliminated without compromising the

product's usefulness or desirability, and (2) the harm-causing inherent characteristic is one that would be recognized by the ordinary person with the ordinary knowledge common to the community.

Bobby Marzine Harges, *An Evaluation of the Mississippi Products Liability Act of 1993*, 63 Miss. L.J. 697, 715 (1994) *quoting* William Liston, *Products Liability in Mississippi After the Enactment of House Bill 1270: The People's Perspective* 26, a paper delivered for Mississippi Bar Summer School for Lawyers in Biloxi, Mississippi (July 19, 1993) (available at Mississippi Bar Center, Jackson, Mississippi). The conclusion, therefore, is that under the Products Liability Act, a manufacturer or seller can only obtain protection if the product which causes harm passes both the risk-utility and the consumer expectations tests.

¶26. This Court has said that "with any granted jury instruction challenged on appeal, two questions are necessarily implicated: Does the instruction contain a correct statement of the law, and is the instruction warranted by the evidence?" ***Langston v. Kidder***, 670 So. 2d 1, 5 (Miss. 1995). In ***Lovett v. Bradford,*** 676 So. 2d 893 (Miss. 1996), this Court held that jury instructions should not be reviewed in isolation; rather they should be read as a whole to determine if the jury was properly instructed. *Id.* at 896.

¶27. Here, the jury was not properly instructed. There is no question that Instruction D-2 did not provide the jury with a correct statement of the law. In fact, it required the jury to apply the consumer expectations test, which was clearly in error. While Instruction P-4 is not a classic risk-utility instruction, it also does not contain any reference to the consumer expectations test.

¶28. Finally, Mack Trucks argues that even if there was an error in the jury instructions, the error was harmless because the jury's verdict was supported by the overwhelming weight of the evidence. Mack Trucks bases its argument on its assertion two of plaintiffs' experts disagreed on the source of the fire. Even though it is not clear where the fire began, the primary focus of the case is on the defective design of the battery. Both of plaintiffs' experts recommended alternative designs consistent with their theories of defective design. Therefore, the reversible error found in the jury instructions is not made harmless in light of the entirety of the evidence.

## <u>CONCLUSION</u>

¶29. We find that only the Products Liability Act' s procedural provisions were applicable to the case sub judice, according to the express terms of the Act. The controlling law applies a risk-utility analysis, not consumer expectation, for determining whether a product, alleged to be defective in design, is unreasonably dangerous. As such, it was reversible error for the trial court to instruct the jury to apply the consumer expectations test in Instruction D-2. Due to the fact that the jury was not properly instructed, the circuit court's judgment is reversed, and this case is remanded for a new trial consistent with this opinion.

¶30. **REVERSED AND REMANDED.**

**PITTMAN, C.J., McRAE, P.J., EASLEY AND GRAVES, JJ., CONCUR. SMITH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, COBB AND CARLSON, JJ.**

**SMITH, PRESIDING JUSTICE, DISSENTING:**

¶31. The basic issue in this case is what law applies, and whether the jury instructions were appropriate based on the answer to that question. It is my opinion that the majority errs in reversing this case, and I

respectfully dissent.

¶32. This case arises from a single-vehicle accident. The decedent's beneficiaries brought suit against Mack Trucks, Inc. claiming that the brake system was faulty. This suit was filed in March of 1993. At that time, the law in Mississippi regarding products liability arguably utilized a consumer expectations test. The majority asserts that *Sperry-New Holland v. Prestage*, 617 So. 2d 248 (Miss. 1993), acknowledged Fifth Circuit cases that had stated such, but noted recent cases by the Court that had adopted the risk utility test. The majority today, and the majority in *Prestage*, are incorrect in this statement of the law. *Prestage* asserts that it was merely clarifying its earlier adoption of the risk utility test. *Id.* at 253. It states that two earlier cases, *Whittley v. City of Meridian*, 530 So. 2d 1341 (Miss. 1988), and *Hall v. Mississippi Chemical Exp., Inc.*, 528 So. 2d 796 (Miss. 1988), clearly adopted the risk utility test. However, this was not so clear, as *Kussman v. V&G Welding Supply, Inc.*, 585 So. 2d 700 (Miss. 1991), followed those cases and clearly utilized the consumer expectations test. Thus, the consumer expectations test was the law at the time the case sub judice was filed.

¶33. Following *Prestage*, which was decided on March 25, 1993, the law in Mississippi unarguably accepted the risk utility test. Shortly thereafter, the Mississippi Legislature passed the Products Liability Act, Miss. Code Ann. § 11-1-63 (Supp. 2001) codifying strict liability law. Procedural provisions of the Act became effective for all cases pending on July 1, 1993, but the substantive provisions were not effective until July 1, 1994. The Act enacted into law a somewhat hodgepodge mixture of the consumer expectations and risk utility tests.

¶34. On July 1, 1994, plaintiffs filed an amended complaint, which changed their theory of the case claiming a design defect in the placement of the fuel tanks. Mississippi law is clear that an amended complaint relates back to the original date of the filing, thus the Act's substantive provisions should not apply. I agree with the majority that the correct law would be the risk utility test. However, I do not agree that the jury instructions given below result in reversible error. I do not believe the two given instructions are in conflict. Further, the overwhelming weight of the evidence is in favor of the verdict returned by the jury.

¶35. There is no reversible error in instructing the jury if all the jury instructions when read together, and taken as a whole, correctly state the law, are not misleading, and adequately cover the issues supported by the evidence. *Lovett v. Bradford*, 676 So. 2d 893, 896-97 (Miss. 1996); *O'Flynn v. Owens-Corning Fiberglas*, 759 So. 2d 526, 533 (Miss. Ct. App. 2000). In this case, Instruction D-2 does not amount to an incorrect statement of the law. While it is true that Instruction D-2 is based on the Products Liability Act, as noted above it has been generally recognized that the Act is a mixture of the two standards. The instruction at issue here predominately sets forth a risk utility standard. There is some language that contemplates foreseeability within the instruction, however, I do not believe this language is completely opposed to the law as it stood prior to adoption of the Act. As this Court has noted "*Prestage* [did] not reject the consumer expectations test where no consumer could expect to be protected by an additional safety device that he obviously knew was not there." *Cooper v. General Motors Corp.*, 702 So. 2d 428, 443 (Miss. 1997).

¶36. The given instruction was not error. Further, even if it was error, it does not rise to the level of reversible error. As I disagree with the majority's opinion that the given instruction was an incorrect statement of law, I dissent.

**WALLER, COBB AND CARLSON, JJ., JOIN THIS OPINION.**

1. The Court of Appeals has reached the same conclusion holding that the statute does not apply to an action commenced prior to its effective date. *O'Flynn v. Owens-Corning Fiberglas,* 759 So.2d 526 (Miss. Ct. App. 2000).