**James C. SATCHER, Plaintiff,**

v.

**HONDA MOTOR CO., LTD., American Honda Motor Company, Inc., and Honda Research and Development Company, Ltd., Defendants.**

**No. 1:87–CV–635 PR.**

United States District Court,
S.D. Mississippi,
Southern Division.

June 21, 1994.

Peter K. Smith, Quitman, MS, Ray Ferrero, Jr., Ferrero & Middlebrooks, Wilton L. Strickland, Ft. Lauderdale, FL, Mack E. Barham, Robert E. Arceneaux, Barham & Arceneaux, New Orleans, LA, for plaintiff.

Ronald G. Peresich, Tere R. Steel, Page, Mannino & Peresich, Charles B. Lewis, Paul D. Hogan, Jr., Linda Hamilton Mowles, Morton, Lewis, King & Krieg, Knoxville, TN, for defendants.

## MEMORANDUM OPINION AND ORDER ON REMAND

PICKERING, District Judge.

This matter is before this Court on remand from the Fifth Circuit.

### PROCEDURAL HISTORY

This product liability case involving a motorcycle-car collision that occurred on October 15, 1985, was filed on October 8, 1987. On October 5, 1990, the defendants moved for summary judgment. This case was assigned to this Court on October 18, 1990, and the motion for summary judgment was denied by this Court [1] on February 5, 1991. On February 27, 1991, following a jury verdict, judgment was entered for plaintiff both as to compensatory and punitive damages. A timely motion for new trial was filed by defendants. Defendants filed neither a motion for directed verdict on the defense of open and obvious nor a motion for judgment notwithstanding the verdict on any ground. On September 23, 1991, this Court rendered a decision denying defendants' motion for a new trial. Timely appeal was made to the Fifth Circuit. On January 25, 1993, a panel of the Fifth Circuit entered an opinion reversing and rendering judgment for defendants.[2] Plaintiff filed a petition for rehearing. On May 28, 1993, the Fifth Circuit granted the rehearing and vacated its Janu-

1. 758 F.Supp. 393 (S.D.Miss.1991). In denying Defendants' Motion for Summary Judgment this Court concluded that there were genuine issues of material fact that should be submitted to a jury for resolution, including the defense of "open and obvious." Prior to this Court's opinion, there were at least two Fifth Circuit opinions that had held that the defense of "open and obvious" was properly submitted to the jury. See, Garner v. Santoro, 865 F.2d 629 (5th Cir. 1989) (remanded on other grounds) (failure to warn); and Page v. Barko Hydraulics, 673 F.2d 134 (5th Cir.1982) (remanded on other grounds) (defective design). Additionally, another Fifth Circuit case handed down since the trial of this matter held the defense of "open and obvious" was properly submitted to the jury. See, Batts v. Tow–Motor Forklift Co., 978 F.2d 1386 (5th Cir. 1992). There were also Fifth Circuit decisions holding that the defense of "open and obvious" was a legal question and summary judgment or directed verdict in favor of the defendant was appropriately entered by the trial court. In its opinion denying summary judgment, and in holding that the defense of "open and obvious" should be submitted to the jury, this Court erroneously discussed the "open and obvious" defense from a "subjective" standpoint rather than an "objective" standpoint. However, when this case was submitted to the jury the open and obvious defense was defined under an "objective," not a "subjective" standard.

2. 984 F.2d 135 (5th Cir.1993). The Fifth Circuit in its original Opinion noted that this Court had erroneously applied a "subjective standard" to the defense of "open and obvious" and held that the question of "open and obvious" should have been ruled on as a matter of law and that Defendants' Motion for Summary Judgment should have been sustained.

ary 25, 1993, opinion and remanded the case to this Court.

After remand, defendants filed a pleading styled Second Supplemental Motion for New Trial and Motion for Judgment Notwithstanding the Verdict.[3] Plaintiff has moved to strike the Motion for Judgment Notwithstanding the Verdict as untimely.[4] Plaintiff has filed a pleading styled "Motion to Reaffirm Judgment After Reconsideration on Remand."

Defendants assert that they are entitled to judgment as a matter of law based on state law precedent that was in effect at the time this case was tried in 1991, and that *Prestage*[5] established a new standard of liability and care and that to apply it retroactively would result in manifest injustice to the defendants. Defendants further contend that if the Court applies *Prestage*, then they are entitled to a new trial because of the application of the "consumer expectations test" rather than the "risk-utility analysis" and further that the punitive damages section of House Bill 1270[6] (§ 11–1–65 of Miss.Code of 1972), effective July 1, 1993, affects the procedure for determining punitive damages and thus affects plaintiff's entitlement to punitive damages in this action.

Plaintiff responds that §§ 11–1–63, 11–1–65, as enacted in House Bill 1270, have no application to this case and that *Prestage* merely clarified existing law in Mississippi and is in harmony with this Court's earlier ruling that the "open and obvious" defense is a question for the jury and not a complete bar to his recovery.

In the opinion of the Fifth Circuit granting the petition for rehearing and remanding this case, the Court stated:

In view of recent developments in the law governing products liability in Mississippi, we now VACATE our original opinion and REMAND the case to the district court for further consideration in the light of these developments.

On March 5, 1993, the Mississippi state legislature enacted House Bill 1270, codifying various elements of Mississippi common law regarding products liability. On March 25, 1993, the Mississippi Supreme Court issued its opinion in *Sperry–New Holland v. Prestage*, 617 So.2d 248, holding that, contrary to prior Fifth Circuit opinions and this panel's opinion in the instant case, Mississippi applies a "risk-utility" analysis in products liability cases and has done so since 1987.[7] These events, occurring subsequent to the panel opinion in this case but while petitions for rehearing were pending before the court, have the potential to alter drastically Mississippi's products liability law.

The appellants argue in response to the petition for rehearing that *Sperry–New Holland* should not be applied to this case because doing so would result in manifest injustice to the parties, that the risk-utility standard does not preclude summary judgment in this case, and that House Bill 1270 codifies Mississippi law as it existed pre *Sperry–New Holland* and changes procedures relative to punitive damage awards. The district court, with its extensive knowledge of the facts and proceedings in this case, is in a far better position than

3. This is now a motion for judgment as a matter of law under Amended Rule 50, Federal Rules of Civil Procedure.

4. Defendants did not at any time make a Motion for Directed Verdict as to the defense of "open and obvious," as indicated above, and did not make a Motion for Judgment Notwithstanding the Verdict on any ground at any time before this matter was remanded to this Court.

5. *Sperry–New Holland v. Prestage*, 617 So.2d 248 (Miss.1993), decided by the Mississippi Supreme Court on March 25, 1993, precipitated the Fifth Circuit's remand of the instant action.

6. This is now codified at Miss.Code Ann. § 11–1–63 (products liability section) and § 11–1–65 (punitive damages section). The bill was adopted by the Mississippi House of Representatives on February 8, 1993, the Mississippi Senate on February 17, 1993, and approved by the Governor of Mississippi on February 18, 1993.

7. The Mississippi Supreme Court relied on *Whittley v. City of Meridian*, 530 So.2d 1341 (Miss. 1988), and *Hall v. Miss. Chemical Exp., Inc.*, 528 So.2d 796 (Miss.1988), to support the holding of *Prestage*. In *Prestage*, *Hall* is cited as a 1987 decision, 617 So.2d at 253. However, both decisions were handed down in 1988.

are we to address and to first apply these new arguments, and to apply the newly developed law to the facts of this case. Thus, we vacate our original opinion and remand this case to the district court for further consideration.

As this Court understands the remand, and the motions filed by the parties since remand, this Court is to decide the following questions:

(1) Does House Bill 1270 merely codify Mississippi law as it existed prior to *Prestage?*

(2) What is the effect of House Bill 1270 on this case?

(3) What is the effect of *Sperry–New Holland v. Prestage*, 617 So.2d 248, on this case?.

(4) If *Prestage* is applicable: (a) will its application result in manifest injustice to defendants; and (b) does the risk-utility standard preclude summary judgment in this case?

(5) Should defendants' Motion for Judgment Notwithstanding the Verdict be stricken as untimely filed?

(6) Are defendants entitled to a new trial?

## 1. DOES HOUSE BILL 1270 MERELY CODIFY MISSISSIPPI LAW AS IT EXISTED PRIOR TO PRESTAGE?

House Bill 1270 provides that a plaintiff cannot recover in a products liability suit for (1) a construction or manufacturing defect, (2) inadequate warnings, (3) a design defect, or (4) breach of expressed warranty if the plaintiff has deliberately and voluntarily chosen to expose himself to a danger *known and appreciated.* Thus the Bill spells out that what has previously been regarded as an "assumption of the risk" defense will be a bar in those four specified types of products liability cases. This defense will be predicated upon the subjective knowledge of a plaintiff. The Bill also provides that as to product liability cases involving inadequate warnings the defense of "open and obvious" will be a bar.[8] The standard for determining whether

the product is unreasonably dangerous will be an "objective" one, not a "subjective" one. Thus, in *inadequate warning cases* "assumption of the risk" and "open and obvious" have been codified as bars to recovery under this Bill after July 1, 1994. In other products liability cases, "assumption of the risk," but not "open and obvious" will be a bar.

This Bill changes the burden of proof as well as the procedure for consideration of punitive damages. After July 1, 1994, punitive damages can be awarded only upon proof of "clear and convincing evidence." In cases filed after July 1, 1993, and in cases pending on July 1, 1993, in which judgment had not been entered, the procedure for awarding punitive damages is changed to the extent that a bifurcated trial is required. *See* MISS.CODE ANN. § 11–1–65 (Supp. 1993).

The legislature adopted House Bill 1270 a little over a month before *Prestage* was decided. Since the *Prestage* decision had not been decided when the legislature adopted House Bill 1270, that decision could not have influenced the passage of House Bill 1270. Judicial decisions generally operate retrospectively since they are regarded as expressions of pre-existing law while statutory enactments operate only prospectively absent a clear intent by the drafters requiring their retroactive application. *See, Kaiser Aluminum v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990); and *U.S. v. Security Industrial Bank*, 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982). Thus, under general legal principles, *Prestage* would operate retrospectively and House Bill 1270 would operate prospectively.

If House Bill 1270 was merely a codification of existing law immediately pre-*Prestage* (Again, the Bill was adopted a little over a month before *Prestage* was decided.), the legislature would have had no reason to delay the effect of the substantive portions of the bill relating to products liability until July 1, 1994, more than a year after its adoption. House Bill 1270 does not merely codify Mississippi products law as it existed prior to

---

8. The Bill codifies the "consumer expectations test" as espoused in Comment i, Restatement of Torts (Second) in products liability cases involving inadequate warnings, but does not codify the "consumer expectations test" in other products liability cases. *See* § 11–1–63(e).

*Prestage.* It substantially changed that law. Under *Prestage,* "risk utility" would be the appropriate analysis and "assumption of the risk" would not be a complete bar. 617 So.2d at 256, 254. Under House Bill 1270 the "assumption of the risk" defense appears to replace the "risk utility analysis" of *Prestage* except in inadequate warnings cases where both "assumption of the risk" and "open and obvious" will apparently replace "risk utility." One cannot say with certainty what the law on this question was in Mississippi prior to 1988. However, the Mississippi Supreme Court in *Prestage* has determined what the law was from 1988 to July 1, 1994. "Risk utility" was the correct analysis during that period.

Whether House Bill 1270 changed the law, or merely codified pre-*Prestage* law is immaterial for two reasons. First, *Prestage* determines what the law on products liability was in Mississippi prior to the adoption of House Bill 1270. *Prestage* determines Mississippi law on products liability from at least 1988 to July 1, 1994, and House Bill 1270 determines Mississippi law on products liability after July 1, 1994. This case was tried in 1991. Thus, this case is controlled by *Prestage.* Secondly, House Bill 1270 would not help defendants even if applicable, which it is not. The "open and obvious" defense of House Bill 1270 applies only to "inadequate warnings cases." This case was tried under a design defect theory. Therefore, even under House Bill 1270 the "open and obvious" defense would not be a bar to design defect.

For the reasons stated above it is immaterial whether House Bill 1270 codified Mississippi Products Liability law pre-*Prestage.*

## 2. DOES HOUSE BILL 1270 HAVE ANY EFFECT ON THIS CASE?

The enacting paragraph of House Bill 1270 provides:

SECTION 5. This act shall take effect and be in force from and after July 1, 1993.

9. Miss.Code Ann. § 11–1–65, §§ (1)(a), (b), (c) & (d) (Supp.1993).

10. There is no situation in which the substantive aspects of House Bill 1270 could impact on this case either in regard to punitive damages or products liability law. However, if for any rea-

Procedural provisions of this act, including subsections (1)(a), (b), (c) and (d) of Section 2 [§ 11–1–65] shall apply to all pending actions in which judgment has not been entered on the effective date of the act, and all actions filed on or after the effective date of the act. All other provisions shall apply to all actions filed on or after July 1, 1994.

The entire products liability section, § 11–1–63, and the substantive portions of the punitive damages section, § 11–1–65, do not go into effect until July 1, 1994. The procedural provisions of § 11–1–65, subsections (1)(a), (b), (c) and (d), apply only to "pending actions in which judgment has not been entered on the effective date of the act, and all actions filed on or after the effective date of the act," which was July 1, 1993.

Final Judgment on the jury verdict was entered in this matter on February 27, 1991, and defendants' Motion for New Trial was denied September 23, 1991. Therefore, since the procedural provisions of § 11–1–65, subsections (1)(a), (b), (c) and (d), apply only to "pending actions in which judgment has not been entered on the effective date of the act", this case was not a "pending" action in which judgment had not been entered for purposes of application of the procedural portions of Section 2 of House Bill 1270.[9] The remaining portions of the bill are not effective until July 1, 1994, and have no effect on this action. Defendants' arguments to the contrary are without merit, House Bill 1270 has no application to this case.[10]

## 3. IS PRESTAGE APPLICABLE TO THE FACTS IN THIS CASE?

"Federal courts ... in this Circuit are obliged to apply the latest and most authoritative expression of state law applicable to the facts of a case." *LeMarque v. Massachusetts Indm. & Life Ins. Co.,* 794 F.2d 194, 196 (5th Cir.1986) "If substantive state law changes between the time of a

son the judgment should be set aside, and a new trial granted, in the opinion of this Court, the procedural aspects of House Bill 1270 as to punitive damages (that is the bifurcated trial) would then be applicable.

federal trial and appeal, federal appellate courts must apply the state law as of the time of the appeal to give effect to the intervening state court decision." *Sioux Ltd. Sec. Litigation v. Coopers and Lybrand,* 914 F.2d 61, 63 (5th Cir.1990). Consequently, under the *Erie* doctrine,[11] the holding of the Mississippi Supreme Court in *Prestage* is binding upon federal courts. Since this case involves the same issue addressed in *Prestage, Prestage* is applicable to this case.

### 4A. DOES THE APPLICATION OF PRESTAGE RESULT IN MANIFEST INJUSTICE TO DEFENDANTS?

■ Defendants argue that *Prestage* established new law and that to apply such new law retrospectively would result in manifest injustice to Defendant. The fallacy of defendants' argument is that *Prestage* did not establish new law. The Fifth Circuit in its opinion remanding this case to this Court stated that *Prestage* held that "contrary to prior Fifth Circuit opinions and this panel's opinion in the instant case, Mississippi applies a 'risk-utility analysis' in products liability cases, and has done so since 1987."[12] *Satcher v. Honda Motor Co., Ltd.,* 993 F.2d 56, 57.

In *Prestage,* the Mississippi Supreme Court held "we today *apply* a 'risk-utility' analysis as *adopted* in *Whittley v. City of Meridian,* 530 So.2d 1341 (Miss.1988), and *Hall v. Miss. Chemical Exp., Inc.,* 528 So.2d 796 (Miss.1987)." *Sperry–New Holland v. Prestage,* 617 So.2d at 253 (emphasis added). Thus, based upon the explicit words found in the *Prestage* opinion itself, and the Fifth Circuit analysis of that opinion in remanding this case, *Prestage* did not announce new law, but articulated and explained law that had been in effect in Mississippi since 1988.[13] Defendants' argument that *Prestage* established new law is contrary to the facts.

The argument that *Prestage* announces new law and that to apply it to the facts of this case would create a miscarriage of justice for defendants is totally misplaced and has no application to the facts of this case. *See LeMarque, supra,* and *Coopers and Lybrand, supra.*

### 4B. DOES A RISK–UTILITY ANALYSIS PRECLUDE SUMMARY JUDGMENT IN THIS CASE?

■ Prior to trial, and during and after trial, defendants' major argument was that summary judgement should be granted because the doctrine of crash worthiness should not be extended to motorcycles. While on appeal, defendants changed the emphasis of their argument and contended that summary judgment should have been granted because the dangerous condition was "open and obvious." In *Prestage* the Mississippi Supreme Court held that the defense of "open and obvious" was not a bar in products liability cases and thus a motion for summary judgment should not have been granted on the basis of the defense of "open and obvious."

In *Prestage,* "The trial court denied Sperry's Motion for Summary Judgment; denied its Motion for Directed Verdict; denied its request for preemptory instructions; and denied its Motion for Judgment Notwithstanding the Verdict [J.N.O.V.]." 617 So.2d at 251. The Mississippi Supreme Court affirmed, holding "Sperry's Motion for Summary Judgment, directed verdict, JNOV, and its request for preemptory instruction were all properly denied." 617 So.2d at 256.

■ Under the "risk-utility analysis," open and obvious is not a complete bar to potential recovery, it is simply a factor to consider in determining whether a product is

---

**11.** *Erie Railroad Company v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

**12.** See footnote 7.

**13.** The clarification by the Mississippi Supreme Court that the "risk-utility analysis" had replaced the "consumer expectations test" with these two decisions has been referred to as "the best kept secret in Mississippi jurisprudence." *Batts v.*

*Tow–Motor Forklift Company,* 153 F.R.D. 103 (N.D.Miss., Feb. 8, 1994). Judge Davidson, in granting Rule 60(b)(6) relief to the Plaintiff in *Batts* after the decision in *Prestage,* discussed candidly the incongruity of relying on *Hall* and *Whittley* for the holding of *Prestage,* while recognizing that certainly *Prestage* is the law in Mississippi regardless of its parentage and is thus binding on federal courts applying Mississippi law.

unreasonably dangerous.[14] _Sperry–New Holland v. Prestage,_ 617 So.2d at 256, n. 4. As the majority in _Prestage_ stated, "Thus, even if a plaintiff appreciates the danger of a product, he can still recover for any injury resulting from that danger provided that the utility of the product is outweighed by the danger that the product creates. Under the 'risk-utility' test, either the judge or the jury can balance the utility and the danger-in-fact, or risk, of the product." 617 So.2d at 254. (citations omitted).

The original Fifth Circuit panel decision in this case determined that summary judgment should have been granted on the basis of the "open and obvious" defense based on an "objective" not a "subjective" finding. That decision was vacated because of _Prestage_ and House Bill 1270. _Prestage_ recognized that the defense of "open and obvious" was not a total bar in products liability cases. Under _Prestage_ this case should have gone to the jury. Accordingly, under _Prestage,_ summary judgment is not appropriate.

### 5. SHOULD DEFENDANTS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BE STRICKEN AS UNTIMELY FILED?

■ Defendants filed no motion for a directed verdict and no motion for a preemptory instruction based on the defense of "open and obvious." Additionally, defendants filed no motion for judgment notwithstanding the verdict on any ground, until after remand. However, after the jury verdict, defendants did file a Motion for a New Trial. In the body of defendants' original Motion for a New Trial there was the following paragraph:

"4. The defects attributed to the motorcycle were conditions which were open and obvious to a casual observer, or to any ordinary consumer, and therefore, Defendants were, as a matter of law, entitled to a verdict in their favor on each of Plaintiff's causes of action."

The introductory paragraph of defendants' original Motion for a New Trial provided only that "Defendants ... move for a new trial...." The Motion contained no prayer for relief and requested no relief other than the request for a new trial as set out in the introductory paragraph. Defendants did raise the defense of "open and obvious" as a ground for a new trial; however, the record is clear that the defendants did not request a judgment notwithstanding the verdict in their Motion for New Trial, or at any other time, until after remand of this case.

This Court in ruling on defendants' Motion for New Trial recognized that defendants were advancing the same argument as they had advanced for summary judgment, in regard to "open and obvious." However, this Court did not understand or interpret that to be a request for a judgment notwithstanding the verdict and defendants never so stated that to the Court nor was it addressed by the Court.

The "open and obvious" defense was discussed very little at the hearing on the motion for a new trial. Indeed, even in regard to defendants' motion for summary judgment, the thrust of defendants' argument was not the defense of "open and obvious" but the question of whether the crash worthiness doctrine should be extended to motorcycles as well as automobiles. The "open and obvious" defense was only an incidental issue to defendants until the decision in _Toney v. Kawasaki Heavy Industries, Ltd.,_ 763 F.Supp. 1356 (S.D.Miss.1991).

In _Wells v. Hico Indep. School Dist.,_ 736 F.2d 243 (5th Cir.1984), _cert. denied,_ 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985), the Fifth Circuit held:

> Appellants also argue _inter alia_ that the district court erred in failing to grant their motion for summary judgment on both due process issues and asks us to reverse the decision below on this basis. We decline to do so.... Once trial began, the summary judgment motions effectively became moot.... As this Court has held:

---

**14.** The view expressed in _Prestage_ that open and obvious is not a complete bar is in unison with this Court's previous opinion wherein the Court expressed the belief that the open and obvious

bar was diametrically opposed to Mississippi's adoption of the "pure" form of comparative negligence. _See_ Miss.Code Ann. § 11–7–15 (1972).

The saving of time and expense is the purpose to be attained by a motion for summary judgment in the proper case. When in due course the final trial is had on the merits it becomes the best test of the rights of the movant. If he wins on trial he has his judgment. If he loses on a fair trial it shows that he ought not to have any judgment. *Woods v. Robb,* 171 F.2d 539, 541 (5th Cir.1948).

We find no reason here to depart from this common sense approach.

736 F.2d at 251, fn. 9.

"[W]e normally do not review the denial of a motion for summary judgment which is followed by a full trial on the merits, the judgment being based on the latter." *Zimzores v. Veterans Administration,* 778 F.2d 264, 267 (5th Cir.1985)

... denial of summary judgment will not serve as a ground of appeal after the movant loses a full trial on the merits. This is so because it would be unjust for the court of appeal to deprive a party of a judgment rendered after a full trial based upon the appellate court's examination of the evidence presented at the time of the motion.

*6 Moore's Federal Practice* § 56.22 at 64 (Supp.1992–93).

It would be a constitutionally impermissible re-examination of the jury's verdict for the district court (or this court) to enter judgment N.O.V. on a ground not raised *in the motion for directed verdict.*

*McCann v. Texas City Refining Co., Inc.,* 984 F.2d 667, 672 (5th Cir.1983). (Emphasis added.) (Other citations omitted) Since it is "constitutionally impermissible" for this Court to grant a "Judgment N.O.V. on a ground not raised in a motion for directed verdict" and since defendants filed no motion for a directed verdict on the "open and obvious" defense, this Court is prohibited from granting a judgment notwithstanding the verdict.

Defendants style the motion it filed before this Court after remand as Second Supplemental Motion for New Trial and Motion for Judgment Notwithstanding the Verdict. Although defendants had filed two motions asking for a new trial, defendants filed no motion requesting judgment notwithstanding the verdict. In the Motion for a New Trial the defense of "open and obvious" was mentioned only as outlined above. One cannot file a second or supplemental motion as to a motion that was never filed.

Based on the foregoing, this Court finds that plaintiff's motion to strike defendants' pleading styled Second Supplemental Motion for Judgment Notwithstanding the Verdict is meritorious and should be granted. However, regardless of the procedural problems, defendants are not entitled to a judgment notwithstanding the verdict under the holding of *Prestage* as more fully discussed under other headings.

### 6. ARE DEFENDANTS ENTITLED TO A NEW TRIAL?

Defendants contend, in the alternative, that they are entitled to a new trial. Motions for a new trial are ordinarily vested in the sound discretion of the Court. The Fifth Circuit test for granting motions for a new trial is whether the verdict is against the "great weight" of the evidence. *See Shows v. Jamisson Bedding, Inc.,* 671 F.2d 927 (5th Cir.1982) A trial court should grant a motion for a new trial if convinced that failure to do so would result in a miscarriage of justice. 11 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2806 at 49 (1973) The Fifth Circuit exercises a "broader review" of orders *granting* motions for a new trial on the basis of the verdict being against the great weight of the evidence than orders *denying* motions for a new trial, and in cases where a new trial has been granted exercises "particularly close scrutiny, to protect the litigant's right to a jury trial." *Shows,* 671 F.2d at 930. (citation omitted.)

However, defendants do not argue in this case that the verdict was against the great weight of the evidence. Defendants argue that they should be granted a new trial because the case was submitted to the jury under a "consumer expectations" analysis rather than a "risk utility" analysis. The problem with defendants' position is that they requested no instructions to present the case to the jury under the "risk-utility" analysis. The instructions on the "consumer ex-

pectations" test were submitted and argued for by the defendants and given by the Court.

Even though neither side cites specific authority, this Court concludes that it should analyze the motion for a new trial on the basis of whether failure to grant the motion would result in "manifest injustice" to defendants. This test has been used to determine if a motion for a new trial should be granted on the basis that the verdict is against the great weight of the evidence, and it is used by appellate courts when determining whether or not to consider grounds raised for the first time on direct appeal. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); and *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307 (5th Cir.1976).

The appropriate place to begin that analysis is a consideration of the difference between an analysis under the "consumer expectations" test and an analysis under the "risk-utility" test as enunciated by the Mississippi Supreme Court. That analysis should start with the court's holding in *Prestage.*

The Court in that case reasoned:

The doctrine of strict liability for a manufacturer, without negligence, was first applied in Mississippi in *State Stove Manufacturing Co. v. Hodges,* 189 So.2d 113, 119 (Miss.1966). *State Stove* has been consistently followed in Mississippi for many years.

In *State Stove,* this Court accepted strict liability and defined its purpose as follows:

The purpose of [strict] liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.

*Id.* at 120 (citation omitted) *State Stove* adopted the version of strict liability stated in Section 402A of the American Law Institute's Restatement of Torts (Second). It states:

§ 402 A. Special Liability of Seller of Product for Physical Harm to User or Consumer.

(1) One who sells any product in a *defective condition unreasonably dangerous* to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A. (Emphasis added)....

617 So.2d at 253.

Section 402A is still the law in Mississippi. How this Court defines the phrases "defective condition" and "unreasonably dangerous" used in 402A dictates whether a "consumer expectations" analysis or a "risk-utility" analysis will prevail.

*Id.* at 254.

The Court then discussed the "consumer expectations" test and concluded:

Thus, in a "consumer expectations" analysis, for a plaintiff to recover, the defect in a product which causes his injuries must not be one which the plaintiff, as an ordinary consumer, would know to be unreasonably dangerous to him. In other words, if the plaintiff, applying the knowledge of an ordinary consumer, sees a danger and can appreciate that danger, then he cannot recover for any injury resulting from that appreciated danger.

617 So.2d at 254.

The Court then set out the analysis that is to be conducted under "risk-utility."

Thus, even if a plaintiff appreciates the danger of a product, he can still recover for any injury resulting from that danger provided that the utility of the product is outweighed by the danger that the product creates.

*Id.* at 254. The Court then held:

... we hold, necessarily, that the "patent danger" bar is no longer applicable in Mississippi. Under a "risk-utility" analysis, the "patent danger" rule does not apply. In "risk-utility," the openness and obviousness of a product's design is simply a factor to consider in determining whether a product is unreasonably dangerous. (citations omitted)

*Id.* at 256, fn. 4.

Under either analysis, "consumer expectations" or "risk utility," the jury has to make the same basic finding, that is that the product was in "a defective condition unreasonably dangerous." Restatement (Second) of Torts § 402A. The theory is the same. The only difference is the analysis.

Under the instructions given by the Court to the jury at the trial of this case, the jury had to find that the motorcycle was in "a defective condition unreasonably dangerous" and further had to find that the danger was not "open and obvious." The consumer expectations analysis was a far stricter test or standard for plaintiff to meet and prove than would have been the standard or test under "risk-utility." [15] This Court is of the opinion that since the case was submitted on the stricter theory of Mississippi law, which was requested by defendants, that defendants have no basis to object. *See Gonzalez v. Ysleta Indep. School Dist.*, 996 F.2d 745 (5th Cir.1993) (case submitted to the jury under a higher standard of care, not reversible error).

Defendant has cited no authority whereby a party can contend for a stricter

standard, win on that issue, and then come back and obtain a new trial because the jury was instructed on a stricter standard as requested and contended for by that party. The Court has found no authority to that effect. Defendants requested this Court to submit this case to the jury under the "consumer expectations" analysis. The Court did what defendants requested. Under the facts of this case, defendants cannot now come back and obtain a new trial on the basis that the Court committed error in granting instructions requested by Defendant. If that could be done, litigation would never end. When a party requests an instruction and obtains it, that party can set aside a jury verdict and get a new trial because such instruction was erroneous only if it was "plain error." *See Litherland v. Petrolane Offshore Const. Services*, 546 F.2d 129, 133, fn. 4 (5th Cir.1977). "Plain error" is error which rises to the level of a manifest injustice or a fundamental miscarriage of justice. *See Bissett v. Ply–Gem Industries, Inc.*, 533 F.2d 142 (5th Cir.1976).[16]

In analyzing the facts of this case and the theory and analysis under which it was presented to the jury, this Court concludes that no manifest injustice will result in not granting the defendants' Motion for New Trial. Defendants lost under an analysis more strict than the analysis they were entitled to present to the jury. Defendants have not demonstrated a "manifest injustice" nor a "fundamental miscarriage of justice."

### CONCLUSION

The Court having responded to all issues and arguments addressed to the Court by the parties, and having responded to all matters directed to its attention by the remand from the Fifth Circuit and having concluded that it is immaterial whether House Bill 1270 codified Mississippi law as it existed prior to *Prestage*, that House Bill 1270 has no effect on this case, that *Prestage* abolishes "open

---

**15.** Plaintiff argues that *Prestage* does not do away with the "consumer expectations" analysis—that it merely gives the plaintiff an option of traveling under the less strict "risk-utility" analysis. The Court, for the reasons stated in this section, does not reach this argument.

**16.** "As a general rule, an appellant cannot assign as error the trial court's failure to give an instruction which was not requested." *Bissett*, 533 F.2d at 145. *See also, Herman v. Hess Oil Virgin Islands Corp.*, 524 F.2d 767, 772, fn. 15 (3d Cir.1975) (reversal not required for failure to charge jury on a legal theory not requested by any of the parties).

and obvious" as a total bar to recovery in products liability cases, that *Prestage* controls this case, that the application of *Prestage* will not result in manifest injustice to defendants, that the *Prestage* decision precludes summary judgment in this case, that the Defendants' Second and Supplemental Motion for Judgment Notwithstanding the Verdict should be stricken, and that defendants are not entitled to a new trial, the Court reaffirms the judgment previously entered in this matter and it is so ordered.

SO ORDERED AND ADJUDGED.